Diego O. Barros, Esq. - NJ Attorney ID # 182412017
**JON L. NORINSBERG, ESQ., PLLC**
110 East 59th Street, Suite 3200
New York, New York 10022
Telephone No.: (212) 791-5396
Facsimile No.: (212)406-6890
Email: diego@norinsberglaw.com

*Attorneys for Plaintiff Corine Valentin*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

------------------------------------------------------------------X

CORINE VALENTIN,

      Plaintiff,

-against-

BIG SNOW AMERICAN DREAM and SNOW OPERATING, LLC.,

      Defendants.

------------------------------------------------------------------X

Docket No.: 21 Civ. 20310

**COMPLAINT**

**JURY TRIAL DEMAND**

**ECF CASE**

Plaintiff CORINE VALENTIN ("Plaintiff" or "Ms. Valentin"), complaining of the defendants, by her attorney, Jon L. Norinsberg, Esq., respectfully states and alleges, upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1. This is a negligence action arising from an accident which took place on February 20, 2020. On that date, Plaintiff CORINE VALENTIN, was severely injured when she was forced to descend a dangerous and improperly designated expert ski trail. As set forth, Defendants were negligent in their ownership, operation, maintenance, control and design of the indoor ski resort where the subject accident took place.

1

## JURISDICTION

2. Jurisdiction arises under 28 U.S.C. §1332, as there is complete diversity amongst the parties in this action, and the matter in controversy exceeds the sum specified by 28 U.S.C. § 1332.

3. Supplemental jurisdiction over any state law claims asserted herein is founded upon 28 U.S.C. §§ 1367.[1]

## VENUE

4. Venue is properly laid in the District of New Jersey under 28 U.S.C. § 1391(b)(3), in that this is the District where multiple Defendants are subject to the Court's personal jurisdiction.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff CORINE VALENTIN is a resident of the County, City, and State of New York.

7. Plaintiff is employed as a nurse in the intensive care unit ("ICU") at Mount Sinai Medical Center.

8. At all times hereinafter mentioned, defendant BIG SNOW AMERICAN DREAM ("BIG SNOW") was and is an indoor ski slope at the American Dream Shopping Mall, located in a retail and entertainment complex, known as the "American Dream Shopping Mall," located in East Rutherford New Jersey.

---

[1] This action was originally filed in the Supreme Court of the State of New York, Index No. 152798/2020. On March 17, 2021, Defendants filed a motion to dismiss based on, lack of jurisdiction and improper venue. On November 19, 2021 the Court granted Defendants' motion but expressly allowed Plaintiff to refile this action in New Jersey. (Ex. A, Order).

9. At all times hereinafter mentioned, defendant BIG SNOW owned, operated, maintained and controlled the indoor ski slope at the American Dream Shopping Mall.

10. At all times hereinafter mentioned, the defendant, SNOW OPERATING, LLC ("SNOW OPERATING"), was and is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New Jersey, with its U.S.A. Headquarters at 112 Main Road, Montville, New Jersey.

11. At all times hereinafter mentioned, defendant SNOW OPERATING owned, operated, maintained and controlled the indoor ski slope at the American Dream Shopping Mall.

## FACTS

**Plaintiff's Accident**

12. On February 20, 2020 plaintiff CORINE VALENTIN and her family traveled from their home in Manhattan to the American Dream Shopping Mall.

13. At approximately 2:30 P.M., plaintiff and her family arrived at the Big Snow American Dream Ski Slope.

14. Plaintiff had never skied before, and participated in a group beginners ski lesson with staff employed by defendants ("Staff Members").

15. Thereafter, after completing this single lesson, plaintiff CORINE VALENTIN was instructed by Staff Members to go up to the top of the slope on the main chair lift.

16. Plaintiff proceeded to take the chair lift up to the very top of the slope.

17. At the top of the slope, there were two trails down to the bottom, one "blue" trail – an intermediate level trail -- and one "black diamond" trail, an expert level trail. There was no "green", or beginner's level, trail to take down to the bottom.

18. Upon reaching the top of the ski slope, plaintiff realized that the slopes were too steep to ski down, and she asked the two Staff Members, employees of defendants, who were stationed at the top -- to let her take the ski lift back down.

19. The Staff Members, however, refused plaintiff's request to take the lift back down, and told her that if she wanted to get down the slope, she would have to take her skis off and walk down to the bottom.

20. Plaintiff initially attempted to walk down the intermediate ski trail in her ski boots, but she found it impossible to walk down such a steep slope in her ski boots. The conditions were extremely icy and slippery, and she kept falling down.

21. Moreover, plaintiff was walking very slow down the slope and skiers were passing her at very high rates of speed, further rendering the attendants' suggestion to walk down the slope impossible.

22. With no other way to get down, plaintiff put her skis back on and attempted to ski down the trail.

23. Not surprisingly, plaintiff repeatedly fell down to the ground while attempting to ski down the slope. On her last attempt to ski down the slope, plaintiff violently fell to the ground, sharply twisting her knee and tumbling, head over feet, multiple times before coming to a stop. Plaintiff was in excruciating pain and crying for help.

24. Thereafter, plaintiff was removed from Big Snow American Dream via ambulance and taken to Hackensack University Medical Center.

25. Shortly thereafter, plaintiff was diagnosed with, inter alia, a torn Anterior Cruciate Ligament ("ACL") in her right knee. The ACL was completely ruptured.

26. This injury is particularly devastating to plaintiff, who is a floor nurse at Mount Sinai, and is required to stand for her entire shift, sometimes up to twelve (12) hours.

27. Plaintiff has been told that she will need to have surgery in order to repair her torn ACL, and that she will need several months convalescence before she can possibly resume her work duties.

**The Negligent Acts and Omissions of Big Snow American Dream and Snow Operating.**

28. Plaintiff's injures were directly caused by the negligent acts and omissions of Big Snow and Snow Operating.

29. Prior to building "North America's First Indoor Ski Slope," defendant hired designers, architects, and engineers to design and construct every aspect of the facility, from the height of the building, to the slope and grade of the individual ski slopes.

30. Each feature of the ski slope is entirely man-made, from the location of the chair lifts to what trails would be accessible, what level of difficulty each trail would be classified, and where warning signs would be posted.

31. The ski slope is designed with one main "chair lift" that is the central feature of the facility ("the main lift").

32. Defendants negligently failed to include a "green" – or beginner's trail – at the top of main chair lift when designing "North America's First Indoor Ski Slope."

33. Shockingly, there are no warning signs to alert beginners that there are only intermediate and expert trails to ski down to the bottom.

34. Defendants also negligently failed to include any type of egress from the top of the ski slope except down either an intermediate or expert ski trail, including any type of stair case or elevator.

35. Equally disturbing, when plaintiff specifically told defendant Staff Members of her fear, inexperience, and inability to ski down an intermediate or expert trial, defendants *refused* to allow her to take the main lift back down.

36. Defendants did not provide *any* alternative way to head to the slope except to tell plaintiff to take her skis off and walk.

37. Defendants did not summon any other staff member and/or ski instructor to assist plaintiff get safely down to the bottom.

38. By reason of defendants' negligence, plaintiff has been severely and permanently damaged and accordingly, seeks appropriate recompense.

39. As a result of the foregoing, the amount of damages sought herein exceeds the jurisdictional limits of all the lower courts which might otherwise have jurisdiction herein.

## AS AND FOR A FIRST CAUSE OF ACTION

40. On February 20, 2020, plaintiff CORINE VALENTIN, was caused to trip and fall to the ground by the dangerous defective condition of the ski slope hereinbefore described, causing her to sustain serious and permanent injuries.

41. Plaintiff's injuries resulting therefrom were proximately caused by the carelessness, recklessness, negligence and gross negligence of the defendants, their agents, servants, and employees in the ownership, operation, management, maintenance, usage and control of the aforementioned premises, without any negligence, want of care or assumption of risk on the part of plaintiff contributing thereto.

42. At all times hereinafter mentioned, and on February 20, 2020, the aforesaid premises and ski slope thereat were in a dangerous, defective and unreasonably hazardous condition and otherwise unsafe, which rendered it a hazard to patrons, and most particularly, the plaintiff.

43. The defendants had both actual and constructive notice of the defective, dangerous, and poorly designed conditions in existence on said defendants' premises, as there have been many other accidents on this slope prior to plaintiff's accident. Notwithstanding such prior accidents, defendants failed to remedy same in a timely fashion, or warn the plaintiff of the dangerous conditions prior to the happening of the occurrence as herein alleged.

44. It was the duty of the defendants, together with defendants' agents, servants and/or employees, to design the aforementioned premises and ski slope thereat, in a reasonably good and safe condition, free from hazards and defects, to erect warnings or barriers and to comply with applicable rules, regulations and laws.

45. It was the duty of the defendants, together with defendants' agents, servants and/or employees, to maintain the aforementioned premises and ski slope thereat, in a reasonably good and safe condition, free from hazards and defects, to erect warnings or barriers and to comply with applicable rules, regulations and laws.

46. The defendants, together with their agents, employees, servants, contractors, architects, and/or engineers, were careless, reckless and negligent, in that they: failed to properly construct its premises, to wit the ski slope; failed to include a beginner trail at the top of the ski slope; failed to provide a safe egress for beginner skiers at the top of the ski slope, thereby creating a trap and hazard for the unwary; failed to provide notice that there was no egress for beginner skiers at the top of the ski slope; failed to properly design its ski slope; failed to install a proper emergency exit from the top of the ski slope; failed to properly warn beginner skiers of the lack of any green trails at the top; failed to maintain its premises with good and accepted construction and building practice; failed to effectuate proper repairs; and failed to fix inadequate repairs.

47. The defendants, together with their agents, servants and/or employees, was careless, reckless, and negligent in that said defendants failed, <u>inter alia</u>, to maintain the aforementioned premises in a good and safe condition, in that it failed to prevent beginner skiers from going to the top of the slope in the main lift; failed to provide a proper and safe egress for beginner skiers from the top of the ski slope; failed to comply with applicable rules, regulations and laws and that the said defendant was otherwise careless, reckless and negligent in the instance.

48. By reason of the negligent acts and omissions of the defendants, as set forth above, plaintiff CORINE VALENTIN sustained severe, painful personal injuries, including, but not limited to, serious injuries to her knee; was rendered sick, sore, lame and disabled and so remains; was confined to, home and bed; was prevented from attending to her usual duties and occupation as a nurse, resulting in substantial loss of earnings and impairment of future earning capacity; has lost and will continue to lose the enjoyment of life, and was obliged to seek and receive medical care and attention and will hereafter necessarily seek further medical care and attention in consequence of the injuries aforesaid.

**AS AND FOR A SECOND CAUSE OF ACTION**

49. Plaintiff repeats, reiterates and realleges each and every allegation set forth in the above paragraphs of this complaint, with the same force and effect as though more fully set forth at length herein.

50. Defendant employees had an opportunity to prevent the foreseeable injury sustained by plaintiff when she asked to be allowed to take the main lift back down to the bottom of the ski slope.

51. In fact, it was an employee of defendant, plaintiff CORINE VALENTIN's ski instructor, who told her that she should take the lift to the top of the mountain.

52. Defendants knew, or should have known, that plaintiff, as a novice skier, did not have the requisite ski skills necessary to ski down either a blue or black trail.

53. When plaintiff got to the top, she told defendants' employees that she was not capable of skiing down either trail and asked to take the chair lift back down.

54. Defendant employees refused this simple request and instead made plaintiff CORNINE VALENTIN attempt to walk down the ski slope in her ski boots, on the very first day she had ever worn ski boots, on a surface that was extremely icy, slippery and uneven.

55. Defendants owed a duty to plaintiff as a patron of the facility to keep her safe, and to listen to reasonable requests to accommodate a novice skier, such as taking the ski lift down when realizing the trails are too advanced and/or summoning assistance to aide plaintiff down to the bottom.

56. Defendants breached their duty of care when they i) sent her up to the top knowing she was a novice skier; ii) outright refused plaintiff's request to take the chair lift down for no reason; and iii) failed to summon other staff members, instructors and/or ski patrol employees, to assist plaintiff down the mountain.

57. As a result of the forgoing, plaintiff sustained serious physical injures, and was taken away from the facility by ambulance.

58. Plaintiff's serious physical injuries were proximately caused by defendants' breach of their duties, and were reasonably foreseeable, and totally preventable.

59. By reason of the foregoing and the negligent acts and omissions of the defendants, as aforesaid, plaintiff CORINE VALENTIN sustained severe, painful personal injuries, including, but not limited to, serious injuries to her knee; was rendered sick, sore, lame and disabled and so remains; was confined to, home and bed; was prevented from attending to her usual duties and occupation as

a nurse, resulting in substantial loss of earnings and impairment of future earning capacity; has lost and will continue to lose the enjoyment of life, and was obliged to seek and receive medical care and attention and will hereafter necessarily seek further medical care and attention in consequence of the injuries aforesaid.

**WHEREFORE**, Plaintiff CORINE VALENTIN demands judgment against the Defendants herein, in a sum exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction, together with the costs and disbursements of this action.

Dated:   New York, New York
         December 2, 2021

                                            Yours, etc.

                                            **JON L. NORINSBERG, PLLC**

                                            _____
                                            Diego O. Barros, Esq.
                                            *Attorneys for Plaintiff*
                                            110 East 59th Street, Suite 3200
                                            New York, New York 10022
                                            Telephone No.: (212) 791-5398
                                            Facsimile No.: (212) 406-6890
                                            Email: diego@norinsberglaw.com